IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>VERTELLUS AGRICULTURE & NUTRITION )<br>SPECIALTIES LLC, )<br><br>Defendant. ) | Civil Action No.<br><br>**1:09-cv-1030 SEB -TAB** |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.   JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   A.   Applicability of the Enhanced LDAR Program. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   B.   Facility-Wide LDAR Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   C.   Monitoring Frequency and Equipment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   D.   Leak Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   E.   Repairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   F.   Delay of Repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   G.   Equipment Replacement and Improvement Program . . . . . . . . . . . . . . . . . . . . . 14
   H.   Management of Change . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
   I.   Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
   J.   Quality Assurance ("QA")/Quality Control ("QC") . . . . . . . . . . . . . . . . . . . . . . 23
   K.   LDAR Audits and Corrective Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
   L.   Certification of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   M.   Recordkeeping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   N.   Operation and Maintenance of the Plant 41 Incinerator . . . . . . . . . . . . . . . . . . 28

VI.   SUPPLEMENTAL ENVIRONMENTAL PROJECT . . . . . . . . . . . . . . . . . . . . . . . . . 29

VII.   REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VIII.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IX.   FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

X.   DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

XI.   INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . . . 45

XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . . 46

XIII.   COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

XIV.   NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XV.   EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

XVI.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

XVII.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

XVIII.  TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

XIX.   PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

XX.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

XXI.   INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

XXII.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## **TABLE OF APPENDICES**

Appendix A          Schematics of closure devices for open-ended lines/valves

Appendix B          List of Pumps in HAP Service for Supplemental Environmental Project

iii

## CONSENT DECREE

WHEREAS, Plaintiff the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"), has filed a complaint concurrently with this Consent Decree against Defendant Vertellus Agriculture & Nutrition Specialties LLC ("Vertellus");

WHEREAS, Vertellus owns and operates a specialty chemical manufacturing plant (the "Facility") located at 1500 South Tibbs St. in Indianapolis, Indiana;

WHEREAS, the Complaint alleges that Vertellus violated Section 112 of the Clean Air Act ("CAA"), 42 U.S.C. § 7412, and the implementing regulations found at 40 C.F.R. Part 63, Subpart H (the National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks); 40 C.F.R. Part 60, Appendix A, Method 21; and 40 C.F.R. Part 63, Subpart GGG (the National Emission Standards for Pharmaceuticals Production) at the Facility;

WHEREAS, in 2007, Vertellus installed and commenced operation of a new incinerator as a control device for the process vents from a process unit at the Facility known as Plant 41;

WHEREAS, Vertellus does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the Parties recognize, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. §§ 7413(b), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Vertellus resides and is located in this judicial district and the violations alleged in the Complaint are alleged to have occurred in this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Vertellus consents to this Court's jurisdiction over this Decree, over any action to enforce this Consent Decree, and over Vertellus.  Vertellus also consents to venue in this judicial district.

2. .    For purposes of this Consent Decree, Vertellus agrees that the Complaint states claims upon which relief may be granted pursuant to Section 112 of the CAA, 42 U.S.C. § 7412.

3.     Notice of the commencement of this action has been given to the State of Indiana as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## II. APPLICABILITY

4.     The obligations of this Consent Decree apply to and are binding upon the United States and upon Vertellus and any successors, assigns, and other entities or persons otherwise bound by law.

5.     No transfer of ownership or operation of the Facility, whether in compliance with the procedures of Paragraphs 5 or 6 or otherwise, shall relieve Vertellus of its obligations to ensure that the terms of this Consent Decree are implemented unless and until:

2

a.      The transferee agrees in writing to undertake the obligations required by this Consent Decree with respect to the Facility, and to intervene as a defendant in this action for the purpose of being bound by the applicable terms of this Consent Decree; and

b.      The United States after receiving information sufficient to demonstrate that the transferee has the technical and financial means to comply with the applicable obligations of this Consent Decree, consents in writing to substitute the transferee for Vertellus with respect to such obligations; and

c.      The Court approves such substitution.

6.      By the lesser of: (i) 30 days prior to the transfer of the ownership or operation of the Facility; or (ii) as early as possible prior to the transfer of the ownership or operation of the Facility, Vertellus shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement between Vertellus and the prospective transferee, to EPA, the United States Attorney for the Southern District of Indiana, and the United States Department of Justice, in accordance with Section XIV of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

7.      Vertellus shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Vertellus shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

3

8.      In any action to enforce this Consent Decree, Vertellus shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

9.      Terms used in this Consent Decree that are defined in the CAA or in federal and state regulations promulgated pursuant to the CAA shall have the meaning assigned to them in the CAA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "CAP" shall mean the Corrective Action Plan described in Paragraph 46 of this Consent Decree.

b.      "Certified Low-Leaking Valves" shall mean valves for which a manufacturer has issued either:  (i) a written guarantee that the valve will not leak above 100 ppm for five years; or (ii) a written guarantee, certification or equivalent documentation that the valve has been tested pursuant to generally-accepted good engineering practices and has been found to be leaking at no greater than 100 ppm.

c.      "Certified Low-Leaking Valve Packing Technology" shall mean valve packing technology for which a manufacturer has issued either:  (i) a written guarantee that the valve packing technology will not leak above 100 ppm for five years; or (ii) a written guarantee, certification or equivalent documentation that the valve packing technology has been tested pursuant to generally-accepted good engineering practices and has been found to be leaking at no greater than 100 ppm.

4

d.  "Complaint" shall mean the Complaint filed by the United States in this action.

e.  "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto, but in the event of any conflict between the text of this Consent Decree and any Appendix, the text of this Consent Decree shall control.

f.  "Covered Process Units" shall mean the units identified by Vertellus at the Facility as Plant 27 and Plant 41.

g.  "Covered Equipment" shall mean all Covered Types of Equipment in all Covered Process Units.

h.  "Covered Types of Equipment" shall mean all valves, connectors, pumps, agitators, and OELs in light liquid, heavy liquid, or gas/vapor service that are regulated under a federal, state, or local leak detection and repair program.

i.  "Date of Lodging of this Consent Decree" or "Date of Lodging" shall mean the date that the United States files a "Notice of Lodging" of this Consent Decree with the Clerk of this Court for the purpose of providing notice and comment to the public.

j.  "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

k.  "DOR" shall mean Delay of Repair.

l.  "Effective Date" shall have the meaning given in Section XV.

m.      "ELP" shall mean the Enhanced Leak Detection and Repair Program specified in Paragraphs 13 - 48 of this Decree.

n.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

o.      "Facility" shall mean the specialty chemical plant owned and operated by Vertellus and located at 1500 South Tibbs St., Indianapolis, Indiana.

p.      "First Maintenance Shutdown" shall mean the first shutdown of a Covered Process Unit that occurs no sooner than eighteen months after the Date of Lodging of this Consent Decree and either is done for the purpose of scheduled maintenance or lasts longer than 14 calendar days.

q.      "LDAR" shall mean Leak Detection and Repair.

r.      "LDAR Audit Commencement Date" or "Commencement of an LDAR Audit" shall mean the first day of the on-site inspection that accompanies an LDAR audit.

s.      "LDAR Audit Completion Date" or "Completion of an LDAR Audit" shall mean 120 days after the LDAR Audit Commencement Date.

t.      "Maintenance Shutdown" shall mean a shutdown of a Covered Process Unit that either is done for the purpose of scheduled maintenance or lasts longer than 14 calendar days.

u.      "Method 21" shall mean the test method found at 40 C.F.R. Part 60, Appendix A, Method 21.

v.      "Month" shall mean calendar month.

6

w.      "OEL" or "Open-Ended Line" shall mean any valve, except pressure relief valves, having one side of the valve seat in contact with process fluid and one side open to atmosphere, either directly or through open piping.

x.      "OELCD" shall mean an open-ended valve or line at the closure device.

y.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

z.      "Parties" shall mean the United States and Vertellus.

aa.     "Quasi-Directed Maintenance" shall mean the utilization of monitoring (or other method that indicates the relative size of the leak) within 24 hours of each attempt at repair of a leaking piece of equipment in order to achieve the best repair/lowest emission rate possible.

bb.     "Screening Value" shall mean the highest emission level that is recorded at each piece of equipment as it is monitored in compliance with Method 21.

cc.     "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

dd.     "United States" shall mean the United States of America, acting on behalf of EPA.

ee.     "Vertellus" shall mean Vertellus Agriculture & Nutrition Specialties LLC.

## IV. CIVIL PENALTY

10.     By no later than the later of:  (i) 30 days after the Effective Date of this Consent Decree; or (ii) January 15, 2010, Vertellus shall pay the sum of $425,000 as a civil penalty. Vertellus shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Vertellus,

7

following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of Indiana, 10 West Market Street, Suite 2100, Indianapolis, Indiana 46204. At the time of payment, Vertellus shall send a copy of the EFT authorization form, the EFT transaction record, and a transmittal letter (which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. Vertellus Agriculture & Nutrition Specialties LLC, and shall reference the civil action number, USAO File Number 2009V0085, DOJ case number 90-5-2-1-09022) to the United States in the manner set forth in Section XIV of this Decree (Notices), by email to acctsreceivable.CINWD@epa.gov, and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

11.    If any portion of the civil penalty due to the United States is not paid when due, Vertellus shall pay interest on the amount past due, accruing from the Effective Date through the date of payment, at the rate specified in 28 U.S.C. § 1961. Interest payment under this Paragraph shall be in addition to any stipulated penalty due.

12.    Vertellus shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

A.    Applicability of the Enhanced LDAR Program

13.    The requirements of the ELP shall apply to all Covered Equipment except that the requirements of Paragraphs 14 and 47 shall apply to all equipment at the Facility that is regulated under any federal, state, or local leak detection and repair program. The requirements of this

8

ELP are in addition to, and not in lieu of, the requirements of any other LDAR regulation that may be applicable to a piece of Covered Equipment. If there is a conflict between a federal, state, or local LDAR regulation and this ELP, Vertellus shall follow the more stringent of the requirements.

**B.     Facility-Wide LDAR Document**

14.     By no later than six months after the Date of Lodging of this Consent Decree, Vertellus shall develop a facility-wide document that describes: (i) its facility-wide LDAR program (*e.g.*, applicability of regulations to process units and/or specific equipment; leak definitions; monitoring frequencies); (ii) a tracking program (*e.g.*, Management of Change) that ensures that new pieces of equipment added to the Facility for any reason are integrated into the LDAR program and that pieces of equipment that are taken out of service are removed from the LDAR program; (iii) the roles and responsibilities of all employee and contractor personnel assigned to LDAR functions at the Facility; (iv) how the number of personnel dedicated to LDAR functions is sufficient to satisfy the requirements of the LDAR program; and (v) how the Facility plans to implement this ELP. Vertellus shall review this document on an annual basis and update it as needed by no later than 60 days after each annual LDAR Audit Completion Date.

**C.     Monitoring Frequency and Equipment**

15.     Beginning no later than nine months after the Date of Lodging of this Consent Decree, and except as provided in Paragraph 16, for all Covered Equipment except for that in heavy liquid service, Vertellus shall comply with the following periodic monitoring frequencies, unless more frequent monitoring is required by federal, state, or local laws or regulations:

9

a. Valves – Quarterly

b. Connectors – Semi-Annually

c. Pumps/Agitators – Monthly, except that monitoring shall not be required for pumps that are seal-less or that are equipped with a dual mechanical seal system that complies with the requirements of 40 C.F.R. § 63.163(e)

d. Open-Ended Lines – Quarterly (monitoring will be done at the closure device; if a valve serves as the closure device, monitoring will be done in the same manner as any other valve; examples of closure devices for OELs are attached in Appendix A)

16. <u>Equipment that Has Been Repacked or Replaced pursuant to Subsection G (Optional Election by Vertellus)</u>. For equipment that has been repacked or replaced pursuant to Subsection G below (Equipment Replacement and Improvement Program), Vertellus may monitor such equipment at the frequency required by the most stringent regulation that applies to the piece of equipment. If any such piece of equipment is found to be leaking, Vertellus shall monitor that piece of equipment monthly until the piece of equipment shows no leaks for twelve consecutive months, at which time Vertellus may commence monitoring at the frequency for that type of equipment set forth in either Paragraph 15 or in Subparagraph 17.a or 17.b, as applicable.

17. <u>Alternative Monitoring Frequencies for Valves, Connectors, Open-Ended Lines, and Certain Pumps after Two Years (Optional Election by Vertellus)</u>. At any time after two consecutive years of monitoring valves, connectors, open-ended lines, and pumps that are subject to the requirements of the National Emission Standards for Pharmaceuticals Production, 40 C.F.R. Part 63, Subpart GGG, pursuant to the requirements of Paragraph 15, Vertellus may elect to comply with the monitoring requirements set forth in this Paragraph by notifying EPA no later than three months prior to commencing monitoring under this Paragraph. Vertellus may elect to

10

comply with the monitoring requirements of this Paragraph at Plant 27 and/or Plant 41, but may not make this election for anything less than all pieces of the same type of Covered Equipment in each Plant. An election to comply with the monitoring requirements of Subparagraph 17.a (for valves, connectors, and OELs) or Subparagraph 17.b (for applicable pumps) must include an election to comply with Subparagraph 17.c; Vertellus may not elect to comply with Subparagraph 17.a and/or 17.b (as applicable) without also complying with Subparagraph 17.c.

a.   For valves, connectors, and open-ended lines that have not leaked at any time for at least two consecutive years of monitoring. For valves, connectors, and open-ended lines that have not leaked at any time for at least the two years prior to electing this alternative, Vertellus shall monitor valves and open-ended lines one time per year and shall monitor connectors one time every two years.

If any leaks are detected during this alternative monitoring schedule or during an LDAR audit or a federal, state or local audit or inspection, Vertellus shall immediately start monitoring the equipment found to have leaked pursuant to the requirements of Subparagraph 17.c.

b.   For pumps that are subject to the requirements of the National Emission Standards for Pharmaceuticals Production, 40 C.F.R. Part 63, Subpart GGG ("Pharma MACT"), and have not leaked at any time for at least two consecutive years of monitoring. For pumps that are subject to the requirements of the Pharma MACT and have not leaked at any time for at least two consecutive years of monitoring, Vertellus shall monitor these pumps quarterly. If any leaks are discovered during this monitoring, Vertellus shall immediately start monitoring the pump(s) found to have leaked pursuant to the requirements of Subparagraph 17.c.

c.   For valves, connectors, open-ended lines, and, if applicable, pumps subject to the Pharma MACT, that have leaked at any time in the prior two years of monitoring. For valves, connectors, open-ended lines, and, if applicable, pumps subject to the Pharma MACT, that have leaked at any time in the prior two years of monitoring, Vertellus shall monitor each piece of equipment monthly until the piece of equipment shows no leaks for twelve consecutive months, at which time Vertellus may commence monitoring at the frequency for that type of equipment set forth in Subparagraph 17.a or 17.b, as applicable.

11

18.     Beginning no later than nine months after the Date of Lodging of this Consent Decree, for all Covered Equipment except for that in heavy liquid service, Vertellus shall comply with Method 21 in performing LDAR monitoring, using an instrument attached to a data logger (or an equivalent instrument) which directly electronically records the Screening Value detected at each piece of equipment, the date and time that each Screening Value is taken, and the identification numbers of the monitoring instrument and technician.  Vertellus shall transfer this monitoring data to an electronic database on at least a weekly basis for recordkeeping purposes.

**D.     Leak Definitions**

19.     Beginning no later than nine months after the Date of Lodging of this Consent Decree and continuing until termination, for all leaks detected at or above the leak definitions listed in Table 1 for the specific equipment type, Vertellus shall perform repairs in accordance with Paragraphs 21 - 24 of this Enhanced LDAR Program.

Table 1:  Leak Definitions by Equipment Type

| Equipment Type | Leak Definition (ppm) |
|---|---|
| Valves | 250 |
| Connectors | 250 |
| Pumps | 500 |
| Agitators | 500 |
| OELs (at the Closure Device) | 250 |

20.     Beginning no later than nine months after the Date of Lodging of this Consent Decree, for all Covered Equipment, at any time, including outside of periodic monitoring, that a leak is detected through audio, visual, or olfactory sensing, Vertellus shall repair the piece of

12

Covered Equipment in accordance with all applicable regulations and with Paragraphs 21 - 24 of this ELP.

E.    **Repairs**

21.    Except as explicitly provided in Subparagraphs 30.b.i and 36.b.i, by no later than 5 days after detecting a leak, Vertellus shall perform a first attempt at repair.  By no later than 15 days after detection, Vertellus shall perform a final attempt at repair or may place the piece of equipment on the Delay of Repair list provided that Vertellus has complied with all applicable regulations and with the requirements of Paragraphs 22 - 24 and 26.

22.    Except as explicitly provided in Subparagraphs 30.b.i and 36.b.i, Vertellus shall perform Quasi-Directed Maintenance during all repair attempts.

23.    Except as explicitly provided in Subparagraphs 30.b.i and 36.b.i, for leaking valves (other than control valves), when other repair attempts have proven ineffective and/or Vertellus is not able to remove the leaking valve from service, Vertellus shall use the drill-and-tap repair method prior to placing the leaking valve on the DOR list unless there is a major safety, mechanical, product quality, or environmental issue with repairing the valve using this method.  Vertellus shall document the reason(s) why any drill and tap repair was (were) not performed prior to placing any valve on the DOR list.  Vertellus shall attempt at least two drill-and-tap repairs before placing a valve on the DOR list.

24.    Except as explicitly provided in Subparagraphs 30.b.i and 36.b.i, for each leak, Vertellus shall record the following information:  the date of all repair attempts; the repair methods used during each repair attempt; the date, time and Screening Values for all re-

13

monitoring events; and, if relevant, the information required under Paragraphs 23 and 26 for Covered Equipment placed on the DOR list.

25.     Nothing in Paragraphs 21 - 24 is intended to prevent Vertellus from taking a leaking piece of Covered Equipment out of service; provided however, that prior to placing the leaking piece of Covered Equipment back in service, Vertellus must repair the leak or must comply with the requirements of Part F (Delay of Repair) in order to place the piece of Covered Equipment on the DOR list.

**F.**     **Delay of Repair**

26.     Beginning no later than three months after the Date of Lodging of this Consent Decree, for all Covered Equipment placed on the DOR list, Vertellus shall:

    a.     Require sign-off from the relevant process unit supervisor or person of similar authority that the piece of Covered Equipment is technically infeasible to repair without a process unit shutdown;

    b.     Undertake periodic monitoring, at the frequency required for other pieces of Covered Equipment of that type in the process unit, of the Covered Equipment placed on the DOR list; and

    c.     Repair (or, if applicable under Subsection G, replace, repack, improve, or eliminate) the piece of Covered Equipment by the end of the next process unit shutdown.

**G.**     **Equipment Replacement and Improvement Program**

27.     Commencing no later than nine months after the Date of Lodging of this Consent Decree, and continuing until termination, Vertellus shall implement the program set forth in Paragraphs 28 - 36 to replace and/or improve the emissions performance of the valves and connectors in each Covered Process Unit.

14

28.     Installing New Valves.  Except as provided in Paragraph 32, Vertellus shall ensure that each new valve that it adds to each Covered Process Unit either is a Certified Low-Leaking Valve or is fitted with Certified Low-Leaking Valve Packing Technology.

29.     List of all Valves in the Covered Process Units.  By no later than nine months after the Date of Lodging of this Consent Decree, Vertellus shall submit to EPA a list of all valves in each Covered Process Unit that are in existence as of the Date of Lodging.  The valves on this list shall be the "Existing Valves" for purposes of Paragraphs 30 - 31.

30.     Replacing or Repacking Existing Valves that have Screening Values at or above 250 ppm.

a.     Replacing or Repacking Requirements.  Except as provided in Paragraph 32, for each Existing Valve that has a Screening Value at or above 250 ppm during any monitoring event, Vertellus shall replace or repack the Existing Valve with a Certified Low-Leaking Valve or with Certified Low-Leaking Valve Packing Technology by no later than 30 days after the monitoring event that triggers the replacement or repacking requirement, unless the replacement or repacking requires a process unit shutdown.  If the replacement or repacking requires a process unit shutdown, Vertellus shall undertake the replacement or repacking during the first Maintenance Shutdown that follows the monitoring event that triggers the requirement to replace or repack the valve.

b.     Repair Requirements Pending Replacements or Repackings pursuant to Subparagraph 30.a.

i.     Subsection E (Repairs) Requirements.  For each Existing Valve that has a Screening Value at or above 250 ppm, Vertellus shall not be required to comply with

15

Subsection E (Repair) pending replacement or repacking pursuant to Subparagraph 30.a if Vertellus completes the replacement or repacking within 30 days of detecting the leak. If Vertellus does not complete the replacement or repacking within 30 days, or if, at the time of the leak detection, Vertellus reasonably can anticipate that it might not be able to complete the replacement or repacking within 30 days, Vertellus shall comply with all applicable requirements of Subsection E (Repair).

ii.     <u>Requirements of Applicable Regulations</u>. For each Existing Valve that has a Screening Value at or above 500 ppm, Vertellus shall comply with all repair and "delay of repair" requirements of any applicable regulation pending replacement or repacking pursuant to Subparagraph 30.a.

31.     <u>Replacing or Repacking Existing Valves that have Screening Values between 100 ppm and 250 ppm</u>.

a.     <u>Replacements or Repackings during the First Maintenance Shutdown of a Covered Process Unit</u>. Prior to the First Maintenance Shutdown of a Covered Process Unit, Vertellus shall generate a list of all Existing Valves within such Covered Process Unit that had Screening Values between 100 ppm and 250 ppm during any monitoring event that took place between the Date of Lodging of this Consent Decree and the last calendar quarter prior to the First Maintenance Shutdown of such Covered Process Unit. Vertellus shall prioritize the list to the extent possible in descending order from worse leaks (at the top) to least worse leaks (at the bottom). Any Existing Valve in the Covered Process Unit that leaked between 100 ppm and 250 ppm two or more times shall be placed higher on the list than any Existing Valve that leaked only once. During the First Maintenance Shutdown of the Covered Process Unit, Vertellus shall

16

replace or repack with either Certified Low-Leaking Valves or Certified Low-Leaking Valve Packing Technology the lesser of: (A) all Existing Valves in the Covered Process Unit on the list, except for any Existing Valves for which replacement or repacking is not required pursuant to Paragraph 32; or (B) the number of Existing Valves in the Covered Process Unit that results from solving the equation set forth below for "$V_{TBRR}$" ("Valves To Be Repacked or Replaced"). If (B) applies, Vertellus shall replace or repack the Existing Valves in the Covered Process Unit starting at the top of the list and proceeding downward, except that Vertellus shall not be required to replace or repack any Existing Valve for which replacement or repacking is not required pursuant to Paragraph 32. If the equation below yields a fraction, the results shall be rounded to the nearest whole number and fractions above 0.50 shall be rounded up.

$$V_{TBRR} = 0.10 \text{ x } (V_T - V_{DOR} - V_{PRR} - V_{PR})$$

Where:

$V_{TBRR}$:  Existing Valves that have leaked between 100 ppm and 250 ppm within the Covered Process Unit and are to be replaced or repacked at the Maintenance Shutdown for such Covered Process Unit with either Certified Low-Leaking Valves or with Certified Low-Leaking Valve Packing Technology

$V_T$:  Total Existing Valves in the Covered Process Unit at the time of the Maintenance Shutdown

$V_{DOR}$:  Existing Valve(s) in the Covered Process Unit on the Delay of Repair list that are to be replaced or repacked at the time of the Maintenance Shutdown

$V_{PRR}$:  Existing Valve(s) in the Covered Process Unit that has (have) been previously repacked or replaced with either Certified Low-Leaking Valves or with Certified Low-Leaking Valve Packing Technology

17

$V_{PR}$:   Existing Valve(s) in the Covered Process Unit that is (are) scheduled to be repacked or replaced prior to the Maintenance Shutdown

b.    Replacements or Repackings during Subsequent Maintenance Shutdowns.

Except as provided in Paragraph 32, Vertellus shall comply with the requirements of Subparagraph 31.a at each Maintenance Shutdown of each Covered Process Unit, not to exceed one time per year and not to exceed four total times during the course of this Consent Decree. In order to generate the list of Existing Valves that leak between 100 ppm and 250 ppm for these subsequent Maintenance Shutdowns, Vertellus shall utilize the Screening Values of the monitoring events that took place between the last Maintenance Shutdown and the last calendar quarter prior to the current Maintenance Shutdown.

c.    Valve Elimination Program.

i.    For each Covered Process Unit, by no later than three months prior to the First Maintenance Shutdown of such Covered Process Unit, Vertellus may elect to submit to EPA for review and comment a proposal to eliminate one or more Existing Valves in organic HAP service for the exclusive purpose of eliminating possible fugitive HAP emissions ("Valve Elimination Proposal"). "Eliminating" an Existing Valve in organic HAP service shall mean the physical removal of the Existing Valve and the reduction, by at least one, of the total number of Existing Valves while simultaneously ensuring the reduction, by at least one, of the total number of fugitive emission points. Vertellus may utilize as a credit toward the number of Existing Valves it must replace or repack ("$V_{TBRR}$") all Existing Valves that Vertellus eliminates from service during the First Maintenance Shutdown of each Covered Process Unit. If the number of Existing Valves eliminated during the First Maintenance Shutdown exceeds the number of valves

18

required to be replaced or repacked during the First Maintenance Shutdown, Vertellus may take credit for the excess number of those replacements or repackings in the replacements or repackings that are required in the subsequent Maintenance Shutdowns pursuant to Subparagraph 31.b.

        ii.     Under this Subparagraph 31.c, only Existing Valves that Vertellus eliminates for the exclusive purpose of reducing possible HAP emissions may be used as a credit toward the number of Existing Valves that Vertellus must replace or repack under the equation in Subparagraph 31.a. Valve eliminations resulting from equipment or process unit changes that Vertellus otherwise would undertake for any other reason may not be utilized for purposes of this Subparagraph 31.c.

        iii.    EPA does not, by its review of Vertellus' Valve Elimination Proposal and/or its failure to comment on Vertellus' Valve Elimination Proposal, warrant or aver in any manner that Vertellus' elimination of any Existing Valves conforms to the requirements of Subparagraphs 31.c.i and 31.c.ii. Vertellus remains exclusively responsible for complying with those requirements.

    32.    Commercial Unavailability of a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology. Vertellus shall not be required to utilize a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology to replace or repack a valve if a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology is commercially unavailable. Prior to claiming this commercial unavailability exemption, Vertellus must contact a reasonable number of vendors of valves and obtain a written representation or equivalent documentation from each vendor that the particular valve that Vertellus needs is

commercially unavailable either as a Certified Low-Leaking Valve or with Certified Low-Leaking Valve Packing Technology.  In the Compliance Status Reports due under Section VII (Reporting) of this Consent Decree, Vertellus shall:  (i) identify each valve for which it could not comply with the requirement to replace or repack the valve with a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology; (ii) identify the vendors it contacted to determine the unavailability of such a Valve or Packing Technology; and (iii) include the written representations or documentation that Vertellus secured from each vendor regarding the unavailability.

33.    <u>Records of Certified Low-Leaking Valves and Certified Low-Leaking Valve Packing Technology</u>.  Prior to installing any Certified Low-Leaking Valves or Certified Low-Leaking Valve Packing Technology, Vertellus shall secure from each manufacturer documentation that demonstrates that the proposed valve or packing technology meets the definition of "Certified Low-Leaking Valve" and/or "Certified Low-Leaking Valve Packing Technology."  Vertellus shall retain that documentation for the duration of this Consent Decree and make it available upon request.

34.    <u>Connector Replacement and Improvement Descriptions</u>.  For purposes of Paragraphs 35 - 36, for each of the following types of connectors, the following type of replacement or improvement shall apply:

| Connector Type | Replacement or Improvement Description |
|---|---|
| Flanged | Replacement or Improvement of the gasket |
| Threaded | Replacement of the connector |
| Compression | Replacement of the connector |

20

| CamLock | Replacement of the gasket |
|---|---|
| Quick Connect | Replacement of the gasket, if applicable, or replace the connector if there is no gasket |
| Any type | Elimination (*e.g.,* through welding, pipe replacement, etc.) |

35. <u>Installing New Connectors</u>. In installing any new connector in a Covered Process Unit, Vertellus shall use best efforts to install a connector that is least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in.

36. <u>Replacing or Improving Connectors</u>.

a. <u>Replacing or Improving Requirements</u>. For each existing connector that, two or more times in a rolling twenty-four month period, has a Screening Value at or above 250 ppm, Vertellus shall replace or improve the connector in accordance with the applicable replacement or improvement described in Paragraph 34. Vertellus shall use best efforts to install a replacement or improvement that will be the least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in. Vertellus shall undertake the replacement or improvement within 30 days after the monitoring event that triggers the replacement or improvement requirement, except where the replacement or improvement requires a process unit shutdown. If the replacement or improvement requires a process unit shutdown, Vertellus shall undertake the replacement or improvement during the first Maintenance Shutdown that follows the monitoring event that triggers the requirement to replace or improve the connector.

21

  b. <u>Repair Requirements Pending Replacements or Improvements Pursuant to</u> <u>Subparagraph 36.a</u>.

   i. <u>Subsection E (Repairs) Requirements</u>.  For each connector that has a Screening Valve at or above 250 ppm, Vertellus shall not be required to comply with Subsection E (Repairs) pending replacement or repacking pursuant to Subparagraph 36.a if Vertellus completes the replacement or repacking within 30 days of detecting the leak.  If Vertellus does not complete the replacement or repacking within 30 days, or if, at the time of the leak detection, Vertellus reasonably can anticipate that it might not be able to complete the replacement or repacking within 30 days, Vertellus shall comply with all applicable requirements of Subsection E (Repairs).

   ii. <u>Requirements of Applicable Regulations</u>.  For each connector that has a Screening Value at or above 500 ppm, Vertellus shall comply with all repair and "delay of repair" requirements of any applicable regulation pending replacement or repacking pursuant to Subparagraph 36.a.

 37. <u>Equipment Replacement/Improvement Report</u>.  In each Compliance Status Report due under Section VII (Reporting) of this Decree, Vertellus shall include a separate section in the Report that: (i) describes the actions it took to comply with this Subsection G, including identifying each piece of equipment that triggered a requirement in Subsection G, the Screening Value for that piece of equipment, the type of action taken (*i.e.*, replacement, repacking, improvement, or elimination), and the date when the action was taken; (ii) identifies any required actions that were not taken and explains why; and (iii) identifies the schedule for any known, future replacements, repackings, improvements, or eliminations.

### H.    Management of Change

38.    Vertellus shall incorporate the equipment changes identified in each Equipment Replacement/Improvement Report into its facility-wide Management of Change protocol.

### I.    Training

39.    By no later than one year after the Date of Lodging of this Consent Decree, Vertellus shall have ensured that all employees and contractors responsible for LDAR monitoring, maintenance of LDAR equipment, LDAR repairs, and/or any other duties generated by the LDAR program have completed training on all aspects of LDAR that are relevant to the person's duties. By that same time, Vertellus shall develop a training protocol to ensure that refresher training is performed once per calendar year and that new personnel are sufficiently trained prior to any involvement in the LDAR program.

### J.    Quality Assurance ("QA")/Quality Control ("QC")

40.    Daily Certification by Monitoring Technicians. Commencing by no later than nine months after the Date of Lodging of this Consent Decree, on each day that monitoring occurs, at the end of such monitoring, Vertellus shall ensure that each monitoring technician certifies that the data collected accurately represents the monitoring performed for that day by requiring the monitoring technician to sign a form that includes the following certification:

> On [insert date], I reviewed the monitoring data that I collected today and certify that, to the best of my knowledge and belief, the recorded data accurately represent the monitoring that I performed today.

41.    Commencing by no later than the first full calendar quarter after the Date of Lodging of this Decree, during each calendar quarter, at unannounced times, an LDAR-trained

23

employee or contractor of Vertellus, who does not serve as an LDAR monitoring technician on a routine basis, shall undertake the following no less than once per calendar quarter:

  a. Review whether any pieces of equipment that are required to be in the LDAR program are not included;

  b. Verify that equipment was monitored at the appropriate frequency;

  c. Verify that proper documentation and sign-offs have been recorded for all equipment placed on the DOR list;

  d. Ensure that repairs have been performed in the required periods;

  e. Review monitoring data and equipment counts (e.g., number of pieces of equipment monitored per day) for feasibility and unusual trends;

  f. Verify that proper calibration records and monitoring instrument maintenance information are maintained;

  g. Verify that other LDAR program records are maintained as required; and

  h. Observe each LDAR monitoring technician in the field to ensure monitoring is being conducted as required.

Vertellus shall correct any deficiencies detected or observed as soon as practicable.  Vertellus shall maintain a log that: (i) records the date and time that the reviews, verifications, and observations required by this Paragraph were undertaken; and (ii) describes the nature and timing of any corrective actions taken.

## K. LDAR Audits and Corrective Action

  42. Vertellus shall retain a third party with experience in conducting LDAR audits to conduct an LDAR audit once every twelve months pursuant to the schedule in Paragraph 43 and the requirements of Paragraph 44.  To the extent that, at any time prior to termination of this

Consent Decree, Vertellus starts to use a third party to undertake its routine LDAR monitoring, Vertellus shall not use the same third party to undertake its LDAR audits.

43.     Until termination of this Decree, Vertellus shall ensure that an LDAR audit at its Facility is conducted every twelve months in accordance with the following schedule:  for the first LDAR audit, the LDAR Audit Commencement Date shall be no later than six months after the Date of Lodging of this Consent Decree.  For each subsequent LDAR audit, the LDAR Audit Completion Date shall occur within the same calendar quarter that the first LDAR Audit Completion Date occurred.

44.     Each LDAR audit shall include but not be limited to reviewing compliance with all applicable LDAR regulations, reviewing and/or verifying the same items that are required to be reviewed and/or verified in Subparagraphs 41.a - 41.g (*i.e.*, reviewing whether any pieces of equipment required to be in the LDAR program are not included, verifying that equipment was monitored at the appropriate frequency, *etc.*), and performing the following activities:

a.     Calculating Comparative Monitoring Audit Leak Percentages.  Covered Equipment shall be monitored in order to calculate a leak percentage for each Covered Process Unit broken down by equipment type (*i.e.*, valves, pumps, agitators, connectors, and OELCDs).  The monitoring that takes place during the audit shall be called "comparative monitoring" and the leak percentages derived from the comparative monitoring shall be called the "Comparative Monitoring Audit Leak Percentages."  Until termination of this Decree, Vertellus shall alternate between undertaking comparative monitoring of the Covered Types of Equipment in Plant 27 in one year and the Covered Types of Equipment in Plant 41 in the following year. Vertellus shall conduct the first audit on Plant 27.

b.     Calculating the Historic, Average Leak Percentage from Prior Periodic Monitoring Events.  For each Covered Process Unit that is audited, the historic, average leak percentage from prior periodic monitoring events, broken down by equipment type (*i.e.*, valves, pumps, agitators, connectors, and OELCDs), shall be calculated.  The following number of complete

25

monitoring periods immediately preceding the comparative monitoring audit shall be used for this purpose: valves - 4 periods; pumps and agitators - 12 periods; connectors - 2 periods; and open-ended lines - 4 periods.

c.   Calculating the Comparative Monitoring Leak Ratio. For each Covered Process Unit and each Covered Type of Equipment, the ratio of the comparative monitoring audit leak percentage from Subparagraph 44.a to the historic periodic monitoring leak percentage from Subparagraph 44.b shall be calculated. This ratio shall be called the "Comparative Monitoring Leak Ratio." If a calculated ratio yields an infinite result, it shall be assumed that one leaking piece of equipment was found in the process unit through historic monitoring during the 12-month period before the audit and the ratio shall be recalculated.

In only the first LDAR audit, Vertellus shall not be required to undertake comparative monitoring on OELCDs or calculate a Comparative Monitoring Leak Ratio for OELCDs because of the unavailability of historic, average leak percentages for OELCDs. LDAR audits after the first audit shall include reviewing the Facility's compliance with this ELP.

45.   When More Frequent Periodic Monitoring is Required. If a Comparative Monitoring Audit Leak Percentage calculated pursuant to Subparagraph 44.a triggers a more frequent monitoring schedule under any applicable federal, state, or local law or regulation than the frequencies listed in the applicable Paragraph in Subsection C – that is, either Paragraph 15, 16, or 17 – for the equipment type in that Covered Process Unit, Vertellus shall monitor the affected type of equipment at the greater frequency unless and until less frequent monitoring is again allowed under the specific federal, state, or local law or regulation. At no time may Vertellus monitor at intervals less frequently than those in the applicable Paragraph in Subsection C.

46.     Corrective Action Plan ("CAP").

a.      Requirements of a CAP.  By no later than 30 days after each LDAR Audit Completion Date, Vertellus shall develop a preliminary corrective action plan if the results of the LDAR audit identify any areas of non-compliance or if the Comparative Monitoring Leak Ratio calculated pursuant to Subparagraph 44.c is 3.0 or higher.  The preliminary CAP shall describe the actions that Vertellus has taken or shall take to correct the areas of non-compliance and/or the systemic causes of a Comparative Monitoring Leak Ratio that is 3.0 or higher.  Vertellus shall include a schedule by which actions that have not yet been completed shall be completed.  Vertellus shall complete each corrective action as expeditiously as possible with the goal of completing each action by no later than 90 days after the LDAR Audit Completion Date.  If any action is not completed or not expected to be completed within 90 days after the LDAR Audit Completion Date, Vertellus shall explain the reasons and propose a schedule for completion as expeditiously as practicable in the final CAP to be submitted under Subparagraph 46.b.

b.      Submission of the Final CAP to EPA.  By no later than 90 days after the LDAR Audit Completion Date, Vertellus shall submit the final CAP to EPA, together with a certification of the completion of each item of corrective action.  If any action is not completed within 90 days after the LDAR Audit Completion Date, Vertellus shall explain the reasons, together with a proposed schedule for completion as expeditiously as practicable.  Vertellus shall submit a supplemental certification of completion by no later than 30 days after completing all actions.

c.      Review/Comment on CAP.  EPA may submit comments on the CAP.  Except for good cause, EPA may not request Vertellus to modify any action within the CAP that

27

already has been completed at the time of EPA's comments. Within 30 days of receipt of any comments from EPA, Vertellus shall submit a reply. Disputes arising with respect to any aspect of a CAP shall be resolved in accordance with the dispute resolution provisions of this Decree.

**L.    Certification of Compliance**

47.    Within 180 days after the initial LDAR Audit Completion Date, Vertellus shall certify to EPA that: (i) the Facility is in compliance with all applicable LDAR regulations and this ELP; (ii) Vertellus has completed all corrective actions, if applicable, or is in the process of completing all corrective actions pursuant to a CAP; and (iii) all equipment at the Facility that is regulated under a federal, state, or local leak detection and repair program has been identified and included in the Facility's LDAR program. To the extent that Vertellus cannot make the certification in all respects, Vertellus shall specifically identify any deviations from Items (i) - (iii).

**M.    Recordkeeping**

48.    Vertellus shall keep all original records, including copies of all LDAR audits, to document compliance with the requirements of this ELP in accordance with Paragraphs 95 - 96 of this Decree. Upon request by EPA, Vertellus shall make all such documents available to EPA and shall provide, in their original electronic format, all LDAR monitoring data generated during the life of this Consent Decree.

**N.    Operation and Maintenance of the Plant 41 Incinerator**

49.    At all times, including periods of startup, shutdown, and malfunction, Vertellus shall operate and maintain the incinerator associated with Plant 41 in a manner consistent with safety and good air pollution control practices for minimizing emissions. By no later than 45

28

days after any bypass of the Plant 41 incinerator, Vertellus shall prepare a bypass incident report ("Bypass Incident Report") that identifies the date, time, and duration of the bypass; the actions taken to minimize the duration of the bypass; the root cause of the bypass; and the corrective action taken or to be taken to minimize the likelihood of the recurrence of the root cause. Vertellus shall implement all corrective actions as soon as practicable.  In each Compliance Status Report due under Section VII of this Decree, Vertellus shall include a copy of all Bypass Incident Reports together with a description of the corrective actions taken, including the timing of all such actions.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT

50.     Vertellus shall implement a Supplemental Environmental Project ("SEP") in accordance with this Section and Appendix B to this Consent Decree.  Appendix B identifies 29 single-seal pumps in organic HAP service at the Facility.  Vertellus shall upgrade or, as necessary, replace each of these pumps with a dual mechanical seal system that meets all of the requirements of 40 C.F.R. §§ 63.163(e)(1) - (6).  Vertellus shall complete the upgrade or replacement of no less than 12 pumps by no later than one year after the Effective Date of this Consent Decree and shall complete the upgrade or replacement of the remaining 17 pumps by no later than two years after the Effective Date of this Consent Decree.

51.     Vertellus is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  Vertellus may use contractors or consultants in planning and implementing the SEP.

52.     With regard to the SEP, Vertellus certifies the truth and accuracy of each of the following:

29

a.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Vertellus in good faith estimates that the cost to implement the SEP is $705,000.

b.     that, as of the date of executing this Decree, Vertellus is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Vertellus was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.     that Vertellus has not received and will not receive credit for this SEP in any other enforcement action; and

e.     that Vertellus will not receive any reimbursement for any portion of the SEP from any other person.

53.     <u>SEP Completion Report</u>. By no later than 60 days after completing the SEP, Vertellus shall submit a SEP Completion Report to EPA in accordance with Section XIV of this Consent Decree (Notices). The SEP Completion Report shall contain the following information:

a.     a detailed description of the SEP as implemented;

b.     a description of any problems encountered in completing the SEP and the solutions thereto;

c.     an itemized list of all eligible SEP costs expended;

d.     a certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

e.     a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

54.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph in order to evaluate Vertellus' SEP Completion Report.

55.    After receiving the SEP Completion Report, the United States shall notify Vertellus whether or not Vertellus has satisfactorily completed the SEP. If Vertellus has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VIII of this Consent Decree.

56.    Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section X of this Decree (Dispute Resolution). No other dispute arising under this Section VI shall be subject to dispute resolution.

57.    Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 64.

58.    Any public statement, oral or written, in print, film, or other media, made by Vertellus making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Vertellus Agriculture & Nutrition Specialties LLC, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

59.    For federal income tax purposes, Vertellus agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing this SEP.

60.    If Vertellus satisfactorily completes the SEP, but does not spend the full amount of the estimate set forth in Subparagraph 52.a, then by no later than 60 days after completing the SEP, Vertellus shall submit to EPA for review and approval, a proposed, additional Supplemental Environmental Project that Vertellus expects will cost at least the difference between the amount set forth in Subparagraph 52.a and the actual cost of the original SEP, together with a proposed schedule for implementation that is no later than one year after the date

31

of EPA's approval of the proposed, additional SEP. Vertellus shall use its best efforts to propose a project that will reduce the emission or potential emission of hazardous air pollutants from its Facility. Any such additional SEP that is approved by EPA shall be subject to the requirements of Subparagraphs 52(b) - (e), and 53 - 59.

## VII. REPORTING REQUIREMENTS

61.   Compliance Status Reports. On the dates and for the time periods set forth in Paragraph 62, Vertellus shall submit to EPA, in the manner set forth in Section XIV (Notices), the following information:

a.   The number of personnel assigned to LDAR functions at the Facility and the percentage of time each person dedicated to performing his/her LDAR functions;

b.   An identification and description of any non-compliance with the requirements of Section V (Compliance Requirements);

c.   An identification of any problems encountered in complying with the requirements of Section V (Compliance Requirements);

d.   The information required in Paragraph 37;

e.   A description of the LDAR trainings that have been done in accordance with this Consent Decree;

f.   Any deviations identified in the QA/QC performed under Subsection J of Section V (Compliance Requirements);

g.   A summary of LDAR audit results including specifically identifying all areas of non-compliance;

h.   The status of all actions under any CAP that was submitted during the reporting period;

i.   The documents and information required under Subsection N of Section V (Compliance Requirements).

62.     Due Dates.  The first compliance status report shall be due thirty-one days after the first full half-year after the Effective Date of this Consent Decree (*i.e.,* either: (i) January 31 of the year after the Effective Date, if the Effective Date is between January 1 and June 30 of the preceding year; or (ii) July 31 of the year after the Effective Date, if the Effective Date is between July 1 and December 31).  The initial report shall cover the period between the Effective Date and the first full half year after the Effective Date (a "half year" runs between January 1 and June 30 and between July 1 and December 31).  Until termination of this Decree, each subsequent report will be due on the same date in the following year and shall cover the prior two half years (*i.e.*, either January 1 to December 31 or July 1 to June 30).

63.     All reports under this Consent Decree shall be submitted to EPA in the manner designated in Section XIV of this Consent Decree (Notices).

64.     Each report submitted under this Consent Decree shall be signed by the plant manager, a corporate official responsible for environmental management and compliance, or a corporate official responsible for plant engineering management, and shall include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein.  I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is, to the best of my knowledge and belief, true, accurate, and complete.

65.     The reporting requirements of this Consent Decree do not relieve Vertellus of any reporting obligations required by the CAA or implementing regulations, or by any other federal,

state, or local law, regulation, permit, or other requirement.  The reporting requirements of this Section are in addition to any other reports, plans, or submissions required by other Sections of this Consent Decree.

66.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.  STIPULATED PENALTIES

67.     Failure to Pay Civil Penalty.  If Vertellus fails to pay any portion of the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Vertellus shall pay a stipulated penalty of $1,000 per day for each day that the payment is late.  Late payment of the civil penalty and any accrued stipulated penalties shall be made in accordance with Paragraph 10.

68.     Failure to Meet all Other Consent Decree Obligations.  Vertellus shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in Table 2 below unless excused under Section IX (Force Majeure).

### Table 2

| Violation | Stipulated Penalty | |
|---|---|---|
| 68.a.  Failure to timely develop a Facility-Wide LDAR Document as required by Paragraph 14 or failure to timely update the Document on an annual basis if needed pursuant to Paragraph 14 | Period of noncompliance | Penalty per day |
| | 1 - 15 days | $150 |
| | 16 - 30 days | $250 |
| | 31 days or more | $500 |
| 68.b.  Each failure to perform monitoring at the frequencies set forth in Paragraph 15 or, if applicable, Paragraphs 16 and 17 | $100 per component per missed monitoring event, not to exceed $10,000 per month per process unit | |

| 68.c. Each failure to perform monitoring in accordance with Method 21 as required by Paragraph 18 | Monitoring frequency for the component | Penalty per monitoring event per process unit |
|---|---|---|
| | Every 2 years | $21,000 |
| | Annual | $16,000 |
| | Semi-Annual | $10,000 |
| | Quarterly | $ 8,000 |
| | Monthly | $ 4,000 |
| 68.d. Each failure to comply with any other requirement of Paragraph 18 | $1,000 per week | |
| 68.e. Each failure to timely perform a first attempt at repair as required by Paragraph 21, unless not required to do so under Subparagraph 30.b.i or 36.b.i | $50 per day for each late day | |
| 68.f. Each failure to timely perform a final attempt at repair as required by Paragraph 21, unless not required to do so under Subparagraph 30.b.i or 36.b.i | Period of noncompliance | Penalty per component per day |
| | Between 1 and 15 days | $100 |
| | Between 16 and 30 days | $200 |
| | Over 30 days | $300 per day for each day over 30 |
| 68.g. Each failure to: (1) Perform Quasi-Directed Maintenance as required by Paragraph 22, unless not required to do so under Subparagraph 30.b.i or 36.b.i. (2) Undertake the drill-and-tap repair method as required by Paragraph 23, unless not required to do so under Subparagraph 30.b.i or 36.b.i (3) Comply with the Delay of Repair requirements of Paragraph 26 | Period of noncompliance | Penalty per component per day |
| | Between 1 and 15 days | $ 50 |
| | Between 16 and 30 days | $100 |
| | Over 30 days | $150 per day for each day over 30 |
| 68.h. Each failure to record the information required by Paragraph 24 | $50 per component per missed item of information | |

| | |
|---|---|
| 68.i.  Failure to install a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology when required to do so during a Scheduled Maintenance | $10,000 per failure |
| 68.j.  Other than failures under Subparagraph 68.i, each failure to install a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology during the timeframe required by Paragraphs 30 or 31, as applicable | <table><tr><td>Period of noncompliance</td><td>Penalty per day per valve</td></tr><tr><td>1 - 15 days</td><td>$ 250</td></tr><tr><td>16 - 30 days</td><td>$ 500</td></tr><tr><td>31 days or more</td><td>$1,000</td></tr></table> |
| 68.k.  Failure to install a connector that is least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in, when required to do so during a Scheduled Maintenance | $10,000 per failure |
| 68.l.  Other than failures under Subparagraph 68.k, each failure to install a connector that is least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in during the timeframe required by Paragraph 36.a | <table><tr><td>Period of noncompliance</td><td>Penalty per day per connector</td></tr><tr><td>1 - 15 days</td><td>$ 250</td></tr><tr><td>16 - 30 days</td><td>$ 500</td></tr><tr><td>31 days or more</td><td>$1,000</td></tr></table> |
| 68.m.  Failure to implement the training program as required by Paragraph 39 | $10,000 per month per annual training requirement |
| 68.n.  Each failure to have each monitoring technician undertake the certification required in Paragraph 40 | $50 per day per technician |
| 68.o.  Each failure to perform the QA/QC procedures as required in Paragraph 41 | $1000 per missed procedure per quarter |
| 68.p.  Each failure to conduct an LDAR audit that conforms to the requirements of Paragraphs 42 - 44 | $5000 per month per audit |

| | | |
|---|---|---|
| 68.q. Each failure to timely submit:<br><br>(1) A Corrective Action Plan that conforms to the requirements of Paragraph 46;<br>(2) A Certification of Compliance that conforms to the requirements of Paragraph 47 | Period of noncompliance<br><br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day per violation<br><br>$ 50<br>$150<br>$250 |
| 68.r. Each failure to implement any corrective actions required by the CAP in a timely manner as required by Paragraph 46 | Period of noncompliance<br><br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day per violation<br><br>$ 250<br>$ 500<br>$ 750 |
| 68.s. Each failure to timely prepare a Bypass Incident Report that conforms to the requirements of Paragraph 49 | Period of noncompliance<br><br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day per violation<br><br>$ 50<br>$150<br>$250 |
| 68.t. Each failure to identify a piece of equipment subject to LDAR requirements, if the failure was determined through a federal, state, or local investigation. If, in addition to failing to identify the piece of equipment, Vertellus also failed to monitor it, then stipulated penalties under Paragraph 68.b also shall apply. | $500 per component | |
| 68.u. Each failure to comply with any recordkeeping, submission, or reporting requirement not specifically identified above in this Table | Period of noncompliance<br><br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day per violation<br><br>$ 50<br>$150<br>$250 |
| 68.v. Failure to satisfactorily complete the SEP identified in Paragraph 50 by the deadline set forth in Paragraph 50 | Period of noncompliance<br><br>1 - 30 days<br>31 - 60 days<br>61 days or more | Penalty per day<br><br>$ 500<br>$1000<br>$1500 |

69.     Waiver of Payment.  The United States may, in its unreviewable discretion, reduce or waive payment of stipulated penalties otherwise due to it under this Consent Decree.

70.     Demand for Stipulated Penalties.  A written demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates; the stipulated penalty amount that the United States is demanding for each violation (as can be best estimated); the calculation method underlying the demand; and the grounds upon which the demand is based.

71.     Stipulated Penalties' Accrual.  Stipulated penalties will begin to accrue on the day after performance is due or the day a violation occurs, whichever is applicable, and will continue to accrue until performance is satisfactorily completed or the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

72.     Stipulated Penalties Payment Due Date.  Stipulated penalties shall be paid no later than sixty (60) days after receipt of a written demand by the United States unless the demand is disputed through compliance with the requirements of Paragraph 74 and the dispute resolution provisions of this Decree.

73.     Manner of Payment of Stipulated Penalties.  Stipulated penalties owing to the United States of under $10,000 will be paid by check and made payable to "U.S. Department of Justice," referencing DOJ Number 90-5-2-1-09022 and USAO File Number 2009V00851, and delivered to the U.S. Attorney's Office in the Southern District of Indiana, 10 West Market Street, Suite 2100, Indianapolis, Indiana  46204.  Stipulated penalties owing to the United States of $10,000 or more will be paid in the manner set forth in Section IV (Civil Penalty) of this Consent Decree.  All transmittal correspondence shall state that the payment is for stipulated

penalties, shall identify the violations to which the payment relates, and shall include the same identifying information required by Paragraph 10.

74.     Disputes over Stipulated Penalties.  By no later than 60 days after receiving a demand for stipulated penalties, Vertellus may dispute liability for any or all stipulated penalties demanded by invoking the dispute resolution procedures of Section X and by placing the disputed amount, if it is greater than $25,000, into an interest-bearing, commercial escrow account.  Vertellus shall provide the United States with a copy of the escrow agreement and the bank statement showing the deposit of the disputed amount into the escrow account.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  If the dispute thereafter is resolved in Vertellus' favor, the escrowed amount plus accrued interest will be returned to Vertellus; otherwise, the amount agreed upon or determined to be due, plus accrued interest thereon, shall be disbursed to the United States.

75.     If Vertellus fails to pay stipulated penalties when due, and is not required to escrow the disputed sum pursuant to Paragraph 74, and does not prevail in dispute resolution, Vertellus shall be liable for interest at the rate specified in 28 U.S.C. § 1961, accruing as of the date payment became due.

76.     No amount of the stipulated penalties paid by Vertellus shall be used to reduce its federal tax obligations.

77.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for a violation of this Consent Decree or applicable law.  If the violations result in excess emissions, the United

39

States may elect to seek compensatory emissions reductions equal to or greater than the excess amounts emitted in addition to injunctive relief or stipulated penalties. Where a violation of this Consent Decree is also a violation of the CAA or its implementing regulations, Vertellus shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

78.     "Force Majeure," for purposes of this Consent Decree, is defined as any event beyond the control of Vertellus, its contractors, or any entity controlled by Vertellus that delays the performance of any obligation under this Consent Decree despite Vertellus' best efforts to fulfill the obligation. The requirement that Vertellus exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event: (a) as it is occurring; and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.

79.     "Force Majeure" does not include Vertellus's financial inability to perform any obligation under this Consent Decree. Unanticipated or increased costs or expenses associated with the performance of Vertellus' obligations under this Consent Decree, or Vertellus' failure to make complete and timely application for any required approval or permit, shall not constitute circumstances beyond Vertellus' control nor serve as the basis for an extension of time under this Section IX.

80.     If any event occurs which causes or may cause a delay or impediment to performance in complying with any provision of this Consent Decree, Vertellus shall notify EPA: (a) orally or by electronic or facsimile transmission as soon as possible, but not later than 72

40

hours after the time Vertellus first knew of the event or should have known of the event by the exercise of due diligence; and (b) in writing not later than seven days after the time Vertellus first knew of the event or should have known of the event by the exercise of due diligence. In the written notice, Vertellus shall specifically reference this Paragraph 80 of the Consent Decree and shall provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Vertellus' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Vertellus, such event may cause or contribute to an endangerment to public health, welfare or the environment. Vertellus shall be deemed to know of any circumstance of which Vertellus, any entity controlled by Vertellus, or Vertellus' contractors knew or should have known. The written notice required by this Paragraph shall be effective upon the mailing of the same by overnight mail or by certified mail, return receipt requested, to EPA in the manner set forth in Section XIV (Notices).

81.     Failure by Vertellus to comply with the notice requirements specified in Paragraph 80 shall preclude Vertellus from asserting any claim of Force Majeure with respect to the particular event involved.

82.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA

41

will notify Vertellus in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

83.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Vertellus in writing of its decision.

84.     If Vertellus elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 30 days after receipt of EPA's notice. In any such proceeding, Vertellus shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Vertellus complied with the requirements of Paragraphs 78 and 80. If Vertellus carries this burden, the delay at issue shall be deemed not to be a violation by Vertellus of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  **DISPUTE RESOLUTION**

85.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Vertellus' failure to seek resolution of a dispute under this Section shall preclude Vertellus from raising any such issue as a defense to an action by the United States to enforce any obligation of Vertellus arising under this Decree.

86.     Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Vertellus sends the United States a written Notice of Dispute.

42

Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 days from the date of the first meeting of the Parties after the Notice of Dispute, unless that period is modified by written agreement. If the Parties cannot resolve the dispute by informal negotiations, then the position advanced by the United State shall be considered binding unless within 30 days after the conclusion of the informal negotiation period, Vertellus invokes formal dispute resolution procedures set forth below.

87.    Formal Dispute Resolution. Vertellus shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Vertellus' position and any supporting documentation relied upon by Vertellus.

88.    The United States shall serve its Statement of Position within 45 days of receipt of Vertellus' State of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Vertellus unless Vertellus files a motion for judicial review of the dispute in accordance with the following Paragraph.

89.    Vertellus may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute,

43

including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

90.     The United States shall respond to Vertellus' motion within the time period allowed by the Local Rules of this Court for responses to dispositive motions. Vertellus may file a reply memorandum, to the extent permitted by the Local Rules.

91.     In a formal dispute resolution proceeding under this Section, Vertellus shall bear the burden of demonstrating that its position complies with this Consent Decree and the CAA and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

92.     Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set forth in this Section X may be shortened upon motion of one of the Parties to the dispute or by agreement of the Parties to the dispute.

93.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Vertellus under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute. If Vertellus does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

44

## XI. INFORMATION COLLECTION AND RETENTION

94.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility, at all reasonable times, upon presentation of credentials, to:

   a.    monitor the progress of activities required under this Consent Decree;

   b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

   c.    obtain documentary evidence, including photographs and similar data, relevant to compliance with the terms of this Consent Decree; and

   d.    assess Vertellus' compliance with this Consent Decree.

95.     Until at least two years after the termination of this Consent Decree, Vertellus shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information in electronic form in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that directly relates to Vertellus' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, the United States may request copies of any documents, records, or other information required to be maintained under this Paragraph.

96.     Vertellus may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Vertellus seeks to protect as CBI, Vertellus shall follow the procedures set forth in 40 C.F.R. Part 2.

97.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Vertellus to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

98.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action (and the Findings of Violation cited therein) from the date those claims accrued through the Date of Lodging.

99.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 98. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 98. The United States further reserves all legal and equitable remedies to address any situation that may present an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.

100.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, Vertellus shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or

46

other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 98 of this Section.

101.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Vertellus is responsible for achieving and maintaining compliance with all applicable federal, state, and local laws, regulations, and permits and Vertellus' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Vertellus' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, state, or local laws, regulations, or permits.

102.    This Consent Decree does not limit or affect the rights of Vertellus or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Vertellus, except as otherwise provided by law.

103.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party that is not a Party to this Consent Decree.

## XIII. COSTS

104.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) against Vertellus incurred in any action necessary to enforce this Consent Decree or to collect any portion of the civil penalty or any stipulated penalties due but not paid by Vertellus.

47

## XIV. **NOTICES**

105.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed to the persons set forth below.  Submission of hard copies is required and shall be sufficient to comply with the notice requirements of this Consent Decree.  The email addresses listed below are to permit the submission of courtesy copies.

Notice or submission to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, DC 20044-7611
Re: DOJ No. 90-5-2-1-09022

Notice or submission to EPA:

Air and Radiation Division
EPA Region 5
77 W. Jackson Blvd. (AE-17J)
Chicago, IL 60604
Attn: Compliance Tracker

and

Office of Regional Counsel
EPA Region 5
77 West Jackson Blvd. (C-14J)
Chicago, IL 60604

Including electronic copies to:

loukeris.constantinos@epa.gov
carlson.deboraha@epa.gov

48

Notice or submission to Vertellus:

Site Manager
Vertellus Agriculture & Nutrition Specialties LLC
1500 S. Tibbs Ave.
Indianapolis, IN 46241

and

General Counsel
Vertellus Agriculture & Nutrition Specialties LLC
300 North Meridian St., Suite 1500
Indianapolis, IN 46204-1763

Any Party may, by written notice to the other Party, change its designated notice recipient(s) or

notice address(es) provided above.  Notices submitted pursuant to this Section shall be deemed

submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual

agreement of the Parties in writing.

## XV. **EFFECTIVE DATE**

106.    The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XVI. **RETENTION OF JURISDICTION**

107.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree, entering orders

modifying this Decree, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. **MODIFICATION**

108.    The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by the United States and Vertellus.  Where the modification constitutes a

material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

109.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution); provided, however, that instead of the burden of proof as provided by Paragraph 91, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

110.    By no sooner than five years after the Date of Lodging, Vertellus may serve upon the United States a Request for Termination of this Consent Decree.  In the Request for Termination, Vertellus must demonstrate that it has satisfied the following requirements: (i) maintained satisfactory compliance with this Consent Decree for the two year period immediately preceding the Request for Termination; (ii) satisfactorily completed the Supplemental Environmental Project in Section VI of this Decree; and (iii) paid the civil penalty and any accrued stipulated penalties as required by this Decree.  The Request for Termination shall include all necessary supporting documentation.

111.    Following receipt by the United States of Vertellus' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Vertellus satisfactorily has complied with the requirements for termination.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

112.    If the United States does not agree that the Decree may be terminated, Vertellus may invoke dispute resolution under Section X of this Decree.  However, Vertellus shall not invoke dispute resolution for any dispute regarding termination until 60 days after service of its Request for Termination.

## XIX. **PUBLIC PARTICIPATION**

113.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Vertellus consents to entry of this Consent Decree without further notice.

## XX. **SIGNATORIES/SERVICE**

114.    The undersigned representative of Vertellus and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice (or his or her designee) certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

115.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

116.    Vertellus agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree unless the United States has notified Vertellus in writing that it no longer supports entry of the Decree.

51

117.   Vertellus agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

118.   This Consent Decree and its Appendix constitute the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree and its Appendix and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, except for any plans or other deliverables that are submitted and approved pursuant to this Decree, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, and no such extrinsic document or statement of any kind shall be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

119.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court in this action as to the United States and Vertellus. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

DATED   12/01/2009

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

52

We hereby consent to the entry of the Consent Decree in the matter of <u>United States v. Vertellus Agriculture & Nutrition Specialties LLC</u>, subject to public notice and comment.

FOR THE UNITED STATES OF AMERICA

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ANNETTE M. LANG
Environmental Enforcement Section
Environment and Natural Resources  Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-4213
(202) 616-6584 (fax)
annette.lang@usdoj.gov

TIMOTHY M. MORRISON
United States Attorney
Southern District of Indiana

By:

THOMAS E. KIEPER
Assistant United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, Indiana  46204
(317) 229-2415
(317) 226-6125 (FAX)

We hereby consent to the entry of the Consent Decree in the matter of <u>United States v. Vertellus Agriculture & Nutrition Specialties LLC</u>, subject to public notice and comment.

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY


ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5
Chicago, IL


BHARAT MATHUR
Acting Regional Administrator
U.S. Environmental Protection Agency
Region 5
Chicago, IL

We hereby consent to the entry of the Consent Decree in the matter of <u>United States v. Vertellus Agriculture & Nutrition Specialties LLC</u>.

FOR VERTELLUS AGRICULTURE & NUTRITION SPECIALTIES LLC

[insert]

Anne M. Frye
Vice President